Andre' Johnson Jr.
1718 Joffre Ave.
Toledo, OH 43607
Telephone: (567) 287-2539
Email: Ajohnson19991@gmail.com
Plaintiff in Pro Se

FILED
DEC 17 2020
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
TOLEDO

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF OHIO

ANDRE' JOHNSON JR.

1718 JOFFRE AVE.

TOLEDO, OH 43607

    Plaintiff,

vs.

CHIPOTLE MEXICAN GRILL, INC.

50 W. BROAD ST. SUITE 1330

COLUMBUS, OH 43215,

    Defendant

Case No.: Number 3:20 CV 2793

COMPLAINT AND DEMAND FOR COMPENSATION AND JURY TRIAL

JUDGE HELMICK

MAG. JUDGE HENDERSON

## JURISDICTION

1. This court has jurisdiction under 28 U.S.C. § 1331. Federal question jurisdiction arises pursuant to 29 U.S.C. §206(a)(1) and 29 U.S.C. §211(c).

## VENUE

2. Venue is proper pursuant to 28 U.S.C. §1391 because a substantial part of events giving rise to the claims occurred in this judicial district.

## PARTIES

3. Plaintiff (Andre' Johnson Jr.) resides as 1718 Joffre Ave., Toledo, OH 43607

4. Defendant (Chipotle Mexican Grill, Inc.) resides at 50 W. Broad St., Suite 1330, Columbus, OH 43215

## STATEMENT OF FACTS

5. On June 12, 2020 I was contacted by the General Manager, Robin Crosby (hereinafter referred to as Mr. Crosby), of the Chipotle Mexican Grill store I was previously employed at, located at 4109 Talmadge Rd., Toledo, OH 43623.

6. Mr. Crosby contacted me via text asking if I would come back and work there again, to which I replied yes.

7. On June 20, 2020 Mr. Crosby texted me a schedule I was to work the following week and the dates and times were June 23rd-25th, 27th and 28th of 2020 from 4 pm-11pm.

8. Upon returning to work on the 23rd and attempting to clock in, I found that I could not. I asked Mr. Crosby why I could not access the time clock and he said it was because I had not been reentered into their system yet.

9. Mr. Crosby allowed me to work anyway and told me to record my hours for the day on a blank slip of paper and leave it in the office for him so he could adjust my time after he entered me back into the system.

10. The 24th was the same as the 23rd (see paragraphs 8 and 9)

11. On the 25 upon arrival to work I asked Mr. Crosby if I had been reentered into the system yet so I could access the time clock. He told me that there was an issue with getting me back in the system and that the issue was: while Mr. Crosby and his immediate supervisor, Lisa, had consented to me returning it was unknown to them that at the time they needed the consent of Lisa's immediate supervisor, Carl, also.

12. Mr. Crosby allowed me to work the 25th, 27th and 28th in similar fashion to the 23rd (see paragraph 8 and 9) while he worked on getting consent from Carl on the matter of my concern.

13. Mr. Crosby could not get Carl's consent and on June 29th, 2020, I was told by Mr. Crosby to not return to work.

14. Since I was never entered back into the system, could not access the time clock and no one talked to payroll or HR about it until I inquired with Mr. Crosby about my last check, I never received it.

15. Since the 29th of June I have personally inquired with Mr. Crosby about when I might receive my last check on at least 2 separate occasions, July 10th and September 5th.

16. Upon my July 10th inquiry Mr. Crosby told me that my last check might come as a physical one to the location I worked at and he would let me know if he had received it.

17. Two days later, July 12th, Mr. Crosby followed up with me saying that he would personally call payroll and see about my last check.

COMPLAINT AND JURY DEMAND - 2

18. Upon my inquiry on September 5th with Mr. Crosby he told me my last check has not arrived nor has he heard anything of it.

19. To date I have not been compensated by Chipotle Mexican Grill, Inc. for the shifts I worked June 23rd-25th, 27th and 28th.

20. Around the beginning of August, I suspected that Chipotle Mexican Grill, Inc., might not pay me and that legal action might be necessary

21. Since then, I have been preparing to represent myself in court because I cannot afford legal counsel.

22. August 24th, 2020, I was hired at Kroger located at 2257 N Holland-Sylvania Rd. and fired 2 months later, in October. The stress, sleep loss and anxiety of preparing to represent myself in court presented to be too much to handle, causing me to miss work on multiple occasions and I was terminated as a result.

## CLAIM I.

**(Violation of FLSA; Failure of employer to pay federal minimum wage)**

**(29 U.S.C. § 206(a)(1))**

23. Plaintiff realleges paragraphs 1-22

24. By doing the acts described in paragraphs 8-14 the defendant willfully caused and permitted the violation 29 U.S.C. §206(a)(1), thereby entitling the plaintiff to recover the unpaid wages, an equal amount of the unpaid wages in liquidated damages and a civil money penalty of up to $2,050 pursuant to 29 U.S.C. §216(b) and 29 U.S.C. §216(e)(2).

## CLAIM II.

**(Violation of FLSA; Failure of employer to keep records of employment)**

**(29 U.S.C. §211(c))**

25. Plaintiff realleges paragraphs 1-22

26. By doing the acts described in paragraphs 8-14 the defendant willfully caused and permitted the violation of 29 U.S.C. §211(c) which directly led to the violation alleged in Claim I., entitling the plaintiff to recover unpaid wages, damages, and penalties mentioned in paragraph 24.

## CLAIM III.

**(Breach of contract partially governed by federal law)**

27. Plaintiff realleges paragraphs 1-22

28. By doing the acts described in paragraphs 5-19 the defendant willfully breached a contract with the plaintiff partially governed by Federal Laws (FLSA). Breach of this contract by the defendant, directly led to the violations alleged in Claim I. and Claim II. and entitles the plaintiff to recover unpaid wages, damages and penalties mentioned in paragraph 24. Breach of this contract by the defendant, directly led to the actions in paragraphs 20-22 for which the plaintiff believes he is entitled to recover emotional damages.

## REQUEST FOR RELIEF

The plaintiff humbly request that the court order the defendant pay the cost of court, pay the amount of $350 (three hundred fifty dollars) in unpaid wages, an amount equal to the unpaid wages in liquidated damages and $2,050 (two thousand fifty dollars) in a civil money penalty to the plaintiff. The plaintiff also requests the court order the defendant pay him $250,000 (two hundred fifty thousand dollars) in emotional distress damages for the sleep loss, anxiety stress he has suffered because of preparing to represent himself in court, an action he would never have had to take if the defendant had compensated for his labor originally. And lastly the plaintiff requests that the defendant be ordered to pay $10,000,000 (ten million dollars) in punitive damages for breaching a contract partially governed by federal law (FLSA) and violating the FLSA. The plaintiff believes that he is entitled to these punitive damages or at the very least entitled to request that it be considered because this violation of the FLSA was not only willful but egregious. During a global pandemic, a major multi-billion corporation that saw a 14.1% increase in revenue in the third quarter of 2020 compared to last year saw fit to decide to not pay the plaintiff for money he rightfully earned and is legally entitled to. In a time where millions have suddenly been laid off at the hands of lockdowns and lost their livelihoods, in these trying times of common men and women, this is when the FLSA matters most and any violation cannot and should not be taken lightly. In these times people need every penny they can possibly get because some do not know when or even if they will be employed anytime any time soon. So again, that is why in these times, violations of the FLSA and any other labor laws cannot and should not be taken lightly, and the plaintiff feels like $10,000,000 is enough to punish and deter behavior like this in the future from

Chipotle Mexican Grill, Inc. and to deter any other entity that is currently indulging in this behavior or might start. But a punishment not so harsh that it would in any way financially hurt Chipotle Mexican Grill, Inc., or its investors. In closing the plaintiff humbly request the court order the defendant to pay monetary relief amounting to $10, 252,750 (ten million two hundred fifty-two thousand seven hundred fifty dollars) consisting of unpaid wages, damages and a civil money penalty to the plaintiff and cover the full cost of court seeing as legal intervention would not have been necessarily needed had they paid the plaintiff originally.

December 14, 2020

*Andre Johnson Jr.*
Andre Johnson Jr.
Plaintiff in Pro Se